IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
02 JUN 25 AM 11: 17
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| MORELL RICHEY, | ) |
| Plaintiff, | ) ) ) |
| v. | )  CV 00-JEO-1847-M |
| CANA, INC., | ) ) ) |
| Defendant. | ) |

ku
ENTERED
JUN 2 5 2002

## MEMORANDUM OPINION

This case is before the court on the motion for summary judgment filed by the defendant, Cana, Inc., (doc. 13) -- as well as the plaintiff's motion to strike the defendant's Exhibits "C" and "D" (doc. 19); the defendant's motion to strike the declarations of the plaintiff, Faith Wahl, and Wade Pace (doc. 24); and the plaintiff's motion to strike the defendant's additional evidence submitted with its reply brief (doc. 28). For the reasons set forth below, the defendant's motion for summary judgment (doc. 13) is due to be denied; the plaintiff's motion to strike the defendant's Exhibits "C" and "D" (doc. 19) is due to be denied; the defendant's motion to strike the declarations of the plaintiff, Wahl, and Pace (doc. 24) is due to be granted in part and denied in part; and the plaintiff's motion to strike the defendant's additional evidence submitted with its reply brief (doc. 28) is due to be granted.

### SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## FACTS[1]

The defendant, Cana, Inc., employed the plaintiff, Morell Richey, as a forklift driver in the door department of its Boaz plant. The plaintiff worked for the defendant's predecessor for approximately ten years before the defendant bought the Boaz plant in 1997.

The Boaz plant had three production departments: (1) the door department, (2) the wrap

---

[1] The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiff. They are the "'facts' for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

department, and (3) the paint/print department. The plaintiff had worked in each department and performed numerous duties in these departments. At the time of his termination in October 1999, the plaintiff had worked as a forklift driver for four years.

The plaintiff was terminated in October 1999, allegedly as a result of the defendant's decision to close the door department and move those operations to a plant in Georgia. David Carter, the general manager of the Boaz plant, testified that he began having meetings in August 1999, discussing the closing of the door department. Carter testified that he decided to close the door department at the Boaz plant because of a market slow down. On October 7, 1999, Carter, together with other officers of the defendant, decided to terminate the employees and close the door department.

The defendant contends that all employees of the door department – except Faith Wahl and Emily Smith – were terminated. Wahl was demoted from the position of supervisor in the door department to the position of machine operator in the wrap department. Smith, who had been an inspector in the door department, was assigned to an inspector position in the wrap department. Carter testified that he kept Smith and Wahl because they could "build some samples and some prototypes" in the door department, as needed, and because "they knew where all the materials [were], which was a continuing responsibility, even after the door department closed. (Doc. 14, Ex. G, p. 42). The defendant contends that the plaintiff had complained about helping other employees. However, Wahl, the plaintiff's supervisor, testified that he (the plaintiff) never complained and that he was a good employee. (Doc. 21, Ex. 8, ¶ 3).

Contrary to the defendant's assertion, the plaintiff has presented evidence that two forklift drivers in the door department were retained after the October 1999 reduction in force. The

3

plaintiff contends that Mark Swearington and a Hispanic man were retained after the closing of the door department. Both men were substantially younger than the plaintiff. The defendant does not mention either Swearington or the Hispanic man in its initial submission in support of its motion for summary judgment or its reply brief.

At the time the plaintiff was terminated, he was 56 years old.

The defendant has also presented evidence that the door department was reopened in January 2000; however, the plaintiff did not reapply for a position in the re-opened department. Also, the entire Boaz plant closed in July 2000. These facts may be relevant to the determination of the plaintiff's damages should the plaintiff prevail at a trial on the merits. However, they are not determinative of the defendant's motion for summary judgment.

## DISCUSSION

### Plaintiff's Motion to Strike Defendant's Exhibits "C" and "D"

The plaintiff contends that the defendant's Exhibits "C" and "D" are due to be stricken because these documents are not authenticated. "[E]xhibits used by a party at summary judgment stage must be authenticated at that time." *White v. Wells Fargo Guard Services*, 908 F. Supp. 1570, 1579 (M.D. Ala. 1995) (*citing Mustfov v. Superintendent of Chicago Police Dep't*, 733 F. Supp. 283, 287 (N.D. Ill. 1990) (*citing Wells v. Franzen*, 777 F.2d 1258, 1262 (7th Cir. 1985))).

After the plaintiff filed his motion to strike but prior to the court's decision, the defendant filed additional evidence authenticating Exhibits "C" and "D." (Doc. 27). Therefore, the plaintiff's motion to strike is due to be denied.

The court notes that this evidence is offered in support of only two factual assertions in its brief: (1) that the defendant "bought the plant in Boaz, Alabama in or around 1997" (doc. 14, pp.

4

5-6) and (2) that the defendant reinstated "[a]ll employees rehired within ninety days of their termination . . . with the same wage, benefits, and seniority" (*id.* at 15). These facts are established by other evidence in the record and is not disputed.

### Defendant's Motion to Strike the Declarations of the Plaintiff, Faith Wahl, and Wade Pace

"The rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion." *Lee v. National Life Assur. Co. of Canada*, 632 F.2d 524, 529 (5th Cir. 1980) (*citing Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *Fay v. United States*, 253 F.2d 936, 938 & n.2 (5th Cir. 1958); *Washington v. Maricopa County*, 143 F.2d 871, 872 (9th Cir. 1944), *cert. denied*, 327 U.S. 799, 66 S. Ct. 900, 90 L. Ed. 1024 (1946); *Southern Concrete Co. v. U. S. Steel Corp.*, 394 F. Supp. 362, 380-81 (N.D. Ga. 1975), *aff'd on other grounds*, 535 F.2d 313 (5th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S. Ct. 1113, 51 L. Ed. 2d 543 (1977); *Dickheiser v. Pennsylvania R. Co.*, 5 F.R.D. 5, 9 (E.D. Pa. 1945), *aff'd*, 155 F.2d 266 (3rd Cir. 1946), *cert. denied*, 329 U.S. 808, 67 S. Ct. 620, 91 L. Ed. 689 (1947)).

### The Plaintiff's Declaration

The defendant moves to strike the plaintiff's declaration because it is unsigned. (Doc. 24, ¶ 8). However, the plaintiff has filed his original, signed declaration. (Doc. 23).[2] Therefore, the defendant's motion to strike the plaintiff's declaration on this ground is due to be denied.

The defendant next asserts that the plaintiff "seeks to submit improper testimony" in the

---

[2] In fact, it was filed before the defendant's motion to strike.

form of "conclusory statements which he was questioned about at his deposition with no underlying facts to support them." (Doc. 24, ¶ 7). The defendant fails to detail what specific statements it is referring to in this objection.

In *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658-59 (11th Cir. 1984), the court stated that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.*, 736 F.2d at 657. More particularly, in *Van T. Junkins*, the plaintiff brought an action against the manufacturer of prefabricated buildings to recover for alleged fraud and reckless misrepresentations in denying the plaintiff a dealership after he purchased land and a building. During his deposition, the president of the plaintiff company testified three times that there was no condition attached to his purchasing the building. *Id.*, 736 F.2d at 657. On the motion for summary judgment, the president stated in an affidavit that he had a meeting with representatives of the defendant who told him that if he would purchase one of their buildings then he would be awarded the dealership. (*Id.*). Affirming the trial court's grant of summary judgment for the defendant, the court stated:

> Under these facts as presented, we agree with the district court that the affidavit constituted a sham. When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.

(*Id.*). In *Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11th Cir. 1986), the court stated:

> A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence. "An opposing party's affidavit should be considered

although it differs from or varies [from] his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility." 6 Moore's Federal Practice ¶ 56.15[4] (2d ed. 1985) (footnote omitted).

The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended. To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case, the affiant) was stating the truth. Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact. An affidavit may only be disregarded as a sham "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins,* at 657.

[E]very discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence. *See Choudhry v. Jenkins,* 559 F.2d 1085, 1090 (7th Cir.) (summary judgment was improper even though party's testimony was "not a paradigm of cogency or persuasiveness," since it was not a "transparent sham"), *cert. denied sub nom., Indiana v. Choudhry,* 434 U.S. 997, 98 S. Ct. 634, 54 L. Ed. 2d 491 (1977). In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an early deposition. *Kennett-Murray, Corp. v. Bone,* 622 F.2d 887, 894 (5th Cir. 1980).

The defendant has not demonstrated how, under the foregoing authorities, the court is required to strike any specific portions of the plaintiff's affidavit. Accordingly, this aspect of the motion is due to be denied.

### Faith Wahl's Declaration

The defendant moves to strike the declaration of Faith Wahl because it purportedly contains inadmissible, hearsay statements and because it is irrelevant since Wahl did not participate in the decision to terminate the plaintiff. The defendant objects specifically to hearsay

7

statements in paragraphs 6, 7, and 8. (Doc. 24 at ¶ 9). These paragraphs of Wahl's declaration state as follows:

> 6. One day the plant manager Jerry Hendricks called me into his office and told me that we needed to get something on Richey. In essence he wanted me to help him "frame" Richey. He was asking me to get false evidence against Richey so they could fire him. I refused because I was not going to lie.
>
> 7. In this meeting with Hendricks he kept asking me things like "isn't he (Richey) refusing to pick up that pile of wood" or "isn't he refusing to do what he was told to do" "give me anything". To each question that Hendricks asked me I told him that that was not true and he (Richey) did everything he was supposed to do. I would not go along with trying to damage Richey.
>
> 8. On several occasions I heard Hendricks yell at Richey and call him "old man" in a derogatory and demeaning manner. I also heard Jake Sive one of the supervisors holler at him and call him "old man". This was not being done in a joking way; it was done in a very humiliating way and I finally went to Sive and told him to stop talking to Richey that way and that he (Richey) had a name and that's how he should be addressed. Richey never spoke back to either of these men.

(Doc. 21, Ex. 8 at ¶¶ 6-8).

The court finds that the Wahl's statements regarding her conversation with Hendricks is not hearsay under FED. R. EVID. 801(d)(2). However, the court notes that Wahl's testimony regarding her conversations with Hendricks are not relevant to the court's decision on the defendant's motion for summary judgment. Nevertheless, Hendricks's attempts to obtain concessions from the plaintiff's supervisor that the plaintiff was not a good worker, which is one of the reasons asserted by the defendant for the plaintiff's nonretention during the reduction in force,[3] may be relevant to establishing pretext at the trial of this matter. However, the current

---

[3] The defendant contends, "Plaintiff had complained on occasion about helping out in areas outside his responsibility at the plant. In fact, Plaintiff refused to assist another employee, stating he didn't [sic] want to do somebody else's job." (Doc. 14, p. 9).

8

state of the record prohibits the court from determining the ultimate relevancy of this testimony at this time.

## Wade Pace's Declaration

The defendant contends that Pace's declaration "is full of hearsay, assumptions, and conclusory statements and is improper and inadmissible evidence. Specifically, paragraph 10 is hearsay." (Doc. 24 at ¶ 11). The defendant does not address any other specific portion of Pace's declaration.

Paragraph 10 states: "Another employee named Faith Wahl told me that the plant manager Jerry Hendricks told her that 'we' 'have to get something on Richey because he has us between a rock and a hard place.'" (Doc. 21, Ex. 9 at ¶ 10). Although the court finds that what Hendricks told Wahl is not hearsay, what Wahl said in relating this statement to Pace is hearsay and is inadmissible.[4] Therefore, paragraph 10 of Pace's declaration is due to be stricken. Pace's testimony regarding Wahl's statement of Hendrick's statements to her has not been considered by the court in deciding the defendant's motion for summary judgment.

## Plaintiff's Motion to Strike Evidence Submitted
## With Defendant's Reply Brief

The defendant filed additional evidence with its reply submission. (Doc. 25). As the moving party, the defendant cannot submit additional evidence, without permission of the court, with its reply brief. The reason for this rule is obvious -- the plaintiff must be allowed at least "a reasonable and meaningful opportunity to challenge a motion for summary judgment." *Burns v. Gadsden State Community College*, 908 F.2d 1512, 1516 (11th Cir. 1990) (citing, *inter alia*,

---

[4] Counsel for the plaintiff properly concedes this point. (Doc. 29 at 2).

9

*Winbourne v. Eastern Air Lines, Inc.*, 632 F.2d 219 (2d Cir. 1980) ("purpose of Rule 56(c) is to permit nonmoving party a meaningful opportunity to challenge motion for summary judgment")). In *Burns*, the Eleventh Circuit Court of Appeals stated:

> Recognizing the importance of giving the nonmovant a meaningful opportunity to respond to a motion for summary judgment, this circuit has strictly enforced the requirement of a 10 day advance notice that the court will take a motion for summary judgment under advisement as of a certain date. . . . The reasons for such a requirement are premised on the fact that disposition of a case on summary judgment grounds represents a final adjudication on the merits. It forecloses subsequent litigation on the matter; it is accordingly important that proper notice be given so as to insure "opportunity to present every factual and legal argument available."

*Id.* (internal quotations and citations omitted).

When faced with additional evidence submitted by the moving party after the time set for the non-moving party to file all its evidence in opposition to the motion, a court has two options: "it [can] strike the [evidence] or grant [P]laintiff as the nonmoving party the opportunity to respond to it." *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 410 (1st Cir. 1985); *see Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998) ("Appellants contend that the district court had no 'permissible choice' but to allow a surreply once it had accepted the materials in Seagate's reply. That contention is incorrect. Having accepted the reply brief, the district court in fact had two permissible courses of action. It could either have permitted a surreply or, in granting summary judgment for the movant, it could have refrained from relying on any new material contained in the reply brief."). This court chooses to strike the evidence. The additional evidence attached to the defendant's reply brief (doc. 25), is due to be stricken from the record and has not been considered by the court in deciding the defendant's motion for summary judgment. Even were it considered, it would not change the outcome on the

motion for summary judgment.

## Defendant's Motion for Summary Judgment

The defendant contends that it is entitled to summary judgment as to the plaintiff's claim that he was terminated during a reduction in force based on his age. Specifically, the defendant contends that the plaintiff cannot establish a prima facie case of age discrimination and that he cannot show that the reason for his termination was a pretext for age discrimination. (Doc. 13).

### Prima Facie Case

In order to make a prima facie case of age discrimination for a reduction-in-force termination, the plaintiff must establish that "(1) he was a member of the age group protected by the ADEA at the time of his termination; (2) he was qualified at the time of his termination; and (3) there is evidence from which a reasonable fact finder could conclude that the employer intended to discriminate on the basis of age in making the decision." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1382 (11th Cir. 1998) (citing *Jameson v. Arrow Co.*, 75 F.3d 1528, 1532 (11th Cir. 1996)). The defendant contends that the plaintiff cannot establish the third element; that is, he cannot show that the defendant "intended to discriminate in failing to consider the plaintiff for another position or even that there was a position available for him to be considered for." (Doc. 14 at 13).

The plaintiff has presented evidence that a young, Hispanic man was hired to drive a forklift shortly before the plaintiff was terminated. (Doc. 21, Ex. 8, ¶ 5). Also, the plaintiff testified in his deposition and in his affidavit that the defendant retained Mark Swearington, a young man employed as a forklift driver in the same department as the plaintiff and at the same time it laid him off. (*Id*; Ex. 1 at 33, 49; Ex. 4). The defendant does not rebut or address these

factual assertions.⁵ (Doc. 25).

The court finds that these facts are sufficient to satisfy the third element of the plaintiff's prima facie case. *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1138 (10th Cir.) ("To establish a prima facie case, it is only necessary for a plaintiff to point to circumstances that show that the employer could have retained her, but chose instead to retain a younger employee . . . .")(internal quotations and citations omitted), *cert. denied*, 531 U.S. 876, 121 S. Ct. 182, 148 L. Ed. 2d 125 (2000). Therefore, the court finds that the plaintiff presented sufficient evidence to establish a prima facie of age discrimination with regard to his termination. The defendant's motion for summary judgment on the ground that the plaintiff cannot establish a prima facie case of age discrimination with regard to his termination is due to be denied.

### Pretext

The defendant contends that the plaintiff was terminated due to a legitimate reduction-in-force and not because of his age. It contends, "Plaintiff was employed in the door department in October 1999. Due to poor economic conditions, [the defendant] decided to close the door department in Boaz. The reduction in force was implemented by closing the door department. Plaintiff was terminated due to this legitimate RIF." (Doc. 14 at 14-15).

In order to establish that the defendant's proffer reason for terminating the plaintiff is a pretext, the plaintiff must "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to

---

⁵ In Carter's deposition excerpts, which the court struck, the only reference to Swearington was that he was a forklift operator who was moved to the shipping department to drive a truck at some undetermined time. (Doc. 25, Ex. 1 (Carter Deposition) at 27, 78-79). Carter was unsure about the circumstances surrounding a younger "Mexican forklift driver in his late twenties." (*Id.* at 56-58). There is no reference in Carter's affidavit to Swearington or the other forklift driver. (Doc. 25, Ex. 2 (Carter Aff.)).

conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Champman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000); *see Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000). The plaintiff may establish pretext by showing "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, or (3) that they were insufficient to motivate the employment decision." *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1564 (11th Cir. 1995) (Johnson, J., concurring); *see Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir. 1998) (To prove pretext, "the employee must give evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." (internal quotations and citations omitted)). Evidence that others, outside the protected class, were treated more favorably than Plaintiff is "especially relevant" to the issue of pretext. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S. Ct. 1817, 1825, 36 L. Ed. 2d 668 (1973) ("[The plaintiff] must . . . be afforded a fair opportunity to show that [the defendant's] stated reason for [his] rejection was in fact pretext. ***Especially relevant*** to such a showing would be evidence that [employees outside the protected class] involved in acts against [the defendant] of comparable seriousness . . . were nevertheless retained or rehired. [The defendant] may justifiably refuse to rehire one who was engaged in unlawful, disruptive acts against it, but only if this criterion is applied alike to [all employees]." (emphasis added)).

    As set forth above, the plaintiff has demonstrated that he was terminated while younger forklift drivers in the door department, including Swearington, were retained. The defendant

does not adequately dispute this evidence. Assuming, for purposes of summary judgment, that the defendant retained younger forklift drivers in the door department, a reasonable jury could find that the defendant's articulated reason for terminating the plaintiff -- that the door department was closed and all employees in that department, except Wahl and Smith, were laid off -- is not true and was a pretext for age discrimination.

Therefore, the defendant's motion for summary judgment on the ground that the plaintiff cannot establish that its articulated reason for his termination is a pretext must be denied.

## CONCLUSION

Based on the foregoing, the court finds that the defendant's motion for summary judgment (doc. 13) is due to be denied. The court finds disputed issues of material fact and that the defendant is not entitled to judgment as a matter of law.

The plaintiff's motion to strike the defendant's Exhibits "C" & "D" (doc. 19) is due to be denied. The defendant's motion to strike the declarations of the plaintiff, Wahl, and Pace (doc. 24) is due to be denied as to the declarations of the plaintiff and Wahl, and granted in part and denied in part as to the declarations of Pace. The plaintiff's motion to strike the defendant's additional evidence submitted with its reply brief (doc. 28) is due to be granted.

An appropriate order will be entered.

**DONE** this _____ day of June, 2002.

JOHN E. OTT
United States Magistrate Judge